25CA0535 Peo in Interest of AM 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0535
Adams County District Court No. 22JV159
Honorable Kelley R. Southerland, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.M., a Child,

and Concerning M.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Heidi Miller, County Attorney, Megan Curtiss, Assistant County Attorney, Westminster, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, M.M. (mother) appeals the juvenile court's judgment allocating parental responsibilities for A.M. (the child) to the child's maternal grandmother and grandmother's husband (the grandparents). We affirm.

## I.    Background

¶ 2    In September 2022, the Adams County Department of Human Services filed a petition in dependency and neglect concerning the then-eight-week-old child. The Department alleged concerns about mother's mental health and her ability to care for the child.

¶ 3    The juvenile court granted temporary legal custody to the Department, and the child was placed in foster care. Thereafter, the court adjudicated the child dependent or neglected and adopted a treatment plan for mother.

¶ 4    Within the first month of the case, the Department conducted a diligent search and identified grandmother, who lived in Texas, as a potential placement option. Grandmother told the caseworker that she and her husband were willing and able to be a placement for child, and thus, the Department initiated a home study under

the Interstate Compact on the Placement of Children (ICPC). While the home study was pending, the grandparents began having weekly virtual visits with the child and came to Colorado to meet her. Eventually, the Texas Department of Family and Protective Services completed the ICPC home study and denied placement with the grandparents because of grandmother's "two prior CPS cases with Reason to Believe dispositioning."

¶ 5 Thereafter, the grandparents intervened in the case and filed a motion for in-person visits with the child, which noted that grandmother planned to move to Colorado to "establish a further relationship with [the child] and develop a greater bond." The juvenile court granted the request for weekly in-person visits, and grandmother moved to Colorado. During that time, the Department conducted its own home study and concluded that grandmother was a safe and appropriate placement option.

¶ 6 In January 2024, the grandparents filed a motion to place the child with grandmother in Colorado. Three days later, mother filed a motion for an allocation of parental responsibilities (APR) to the foster parents. The foster parents, who had intervened in the case, later joined mother's motion for an APR to them. The juvenile court

scheduled separate hearings on the motions — one on placement and another on an APR. Before the court held either hearing, the grandparents and the guardian ad litem (GAL) jointly moved for an APR to the grandparents.

¶ 7   The juvenile court then held a three-day placement hearing, which concluded in August 2024. It later issued a written order (placement order) denying the grandparents' request to place the child with grandmother. Specifically, the court found that placing the child with grandmother would not comport with the ICPC, the Department's regulations, or the Colorado Children's Code; would present an "unjustified threat of harm to the child"; and would prohibit reunification between the child and mother. The court subsequently denied the GAL's motion to reconsider the placement order.

¶ 8   After the placement hearing, a different judicial officer was assigned to preside over the case. Before the new judicial officer held the hearing on the parties' competing motions for an APR, the foster parents moved the court to take judicial notice of the prior placement order. And mother moved the court to apply the law of the case doctrine at the upcoming APR hearing; specifically, mother

wanted the court to find that it was bound by the prior judicial officer's findings and conclusions from the placement order.

¶ 9 The juvenile court issued a written order taking judicial notice of the existence of the placement order and its underlying findings. However, the court found that it was not required to apply the law of the case doctrine and was not bound by the placement order. The court then held a three-day hearing on the competing APR motions. At the end of the hearing, the court granted an APR for the child to the grandparents.

## II. Law of the Case Doctrine

¶ 10 Mother's sole contention on appeal is that the juvenile court erred by failing to apply the law of the case doctrine. We disagree.

### A. Applicable Law and Standard of Review

¶ 11 The law of the case doctrine generally requires a court to follow prior relevant rulings made in the same case. *In re Marriage of McSoud*, 131 P.3d 1208, 1213 (Colo. App. 2006). However, when applied to a court's own rulings, the law of the case doctrine is discretionary, not mandatory. *Sidman v. Sidman*, 2016 COA 44, ¶ 9. Thus, it does not prevent a court from revisiting, modifying, or rescinding its own prior rulings. *See In re Bass*, 142 P.3d 1259,

1263 (Colo. 2006) (noting that rulings or orders made in the progress of an ongoing proceeding "may be rescinded or modified during that proceeding upon proper grounds"). To that end, a court is not bound by its prior ruling if following that ruling will result in error or if that ruling is no longer sound due to changed conditions. *Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009). Relatedly, the transfer of a case from one judge to another judge of the same court does not prevent the new judge from revisiting prior rulings or "freeze" the first judge's rulings. *Pearson v. Dist. Ct.*, 924 P.2d 512, 515 (Colo. 1996).

¶ 12    The law of the case doctrine applies only to a court's decisions of law and not to its resolution of factual questions. *In re Marriage of Dunkle*, 194 P.3d 462, 467 (Colo. App. 2008). Moreover, it does not apply to "preliminary" or "tentative" rulings. *In re Estate of Walter*, 97 P.3d 188, 191 (Colo. App. 2003) (quoting *Governor's Ranch Pro. Ctr., Ltd. v. Mercy of Colo., Inc.*, 793 P.2d 648, 650 (Colo. App. 1990)); *see also S. Fork Water & Sanitation Dist. v. Town of S. Fork*, 228 P.3d 192, 195-96 (Colo. App. 2009) ("[A]ny order, however denominated, that does not constitute a final judgment remains

subject to revision or modification at any time before the entry of such a judgment."), *aff'd*, 252 P.3d 465 (Colo. 2011).

¶ 13 Because a court's decision about whether to apply the law of the case doctrine is discretionary, we review that decision for an abuse of discretion. *See People v. Vialpando*, 954 P.2d 617, 624 (Colo. App. 1997). A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People in Interest of M.H-K.*, 2018 COA 178, ¶ 60.

## B. Analysis

¶ 14 Mother argues that the juvenile court erred by failing to follow the placement order as the law of the case or "establish a sufficient basis for deviating from the prior court findings" when it granted an APR to the grandparents. More specifically, she argues that the juvenile court abused its discretion by declining to adopt, as part of its APR judgment, the findings from the placement order — that placement with grandmother would be contrary to the child's best interests; violate the ICPC, the Department's regulations, and the Children's Code; present an unjustified threat of harm to the child; and prohibit reunification with mother.

¶ 15    We reject mother's argument for three reasons.  First, the juvenile court's findings about whether placement with the grandparents was in the child's best interests were not subject to the law of the case doctrine because they were not decisions of law.  *See Dunkle*, 194 P.3d at 467.  Rather, they were factual findings based on the evidence presented to the court at the time of the placement hearing.

¶ 16    Second, to the extent that any part of the placement order constituted a decision of law, it was not a final decision for purposes of applying the law of the case doctrine.  *See Walter*, 97 P.3d at 191.  Rather, a placement order is a temporary order subject to modification, if warranted, to serve the child's best interests.  Indeed, a division of this court has specifically noted that a juvenile court retains the ability to revisit and modify its dispositional orders, including placement orders, throughout a dependency and neglect proceeding.  *See People in Interest of Z.P.S.*, 2016 COA 20, ¶¶ 23-25.  And the flexibility to revisit or modify those orders allows the court to consider whether a new placement is necessary to serve a child's best interests, thereby furthering the purposes of the Children's Code.  *See id.*

¶ 17    Third, even if the law of the case doctrine applied to the placement order, the juvenile court had the discretion to decline to adopt or follow it. *See Bass*, 142 P.3d at 1263; *Pearson*, 924 P.2d at 515. And we perceive no abuse of discretion in that decision for the following reasons.

¶ 18    The juvenile court found that it needed to "hear all admissible evidence regarding the best interests of the child at the time of the [APR] hearing" and that its APR determination would require a "wider evaluation of law and facts" than the prior placement order did. In other words, the court correctly acknowledged that its APR determination had to be based on the child's best interests and the circumstances that existed at the time of the APR hearing, not at the time of the placement hearing, which occurred approximately six months before the APR hearing. *See People in Interest of N.G.G.*, 2020 COA 6, ¶ 29 (a court's determination regarding a child's best interests must be based on the circumstances existing at that time).

¶ 19    Relatedly, a court may decline to apply the law of the case if its prior ruling is no longer sound due to changed conditions. *See Silva*, 223 P.3d at 135. Indeed, at the APR hearing, the juvenile court heard evidence showing that the circumstances of the case

were different than they were at the time of the placement hearing. And those differences necessarily impacted the court's analysis of the child's best interests. For example, in the placement order, the court found that placement with grandmother was not in the child's best interests because, among other things, it would prevent the possibility of reunification with mother. However, at the APR hearing, mother stipulated that she was no longer seeking reunification with the child.

¶ 20   Moreover, in the placement order, the court discredited the Department's home study of grandmother, noting that unlike the thorough ICPC home study, the Department's home study consisted only of an interview with grandmother and input from the caseworker. However, at the APR hearing, an expert "in conducting home studies that comport with the requirements of the Texas Department of Family and Protective Services" testified that she had conducted an additional home study of the grandparents. Although the expert did not testify as a representative of the Texas Department of Family and Protective Services, she stated that her home study, which concluded that the grandparents were a safe and appropriate placement option, "adhered to all of the ICPC

requirements." And the juvenile court specifically credited this new testimony and the additional home study in its determination that an APR to the grandparents was in the child's best interests.

¶ 21 In sum, we are not convinced that the law of the case doctrine was triggered by the juvenile court's placement order. However, to the extent that it was, the court did not abuse its discretion by declining to apply it. Accordingly, reversal is not warranted.

### III. Disposition

¶ 22 The judgment is affirmed.

JUDGE PAWAR and JUDGE YUN concur.